IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PRISCILLA M. SANDERS,

        Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social
Security,

        Defendant.

Case No. 6:14-cv-01608-AA
OPINION AND ORDER

AIKEN, Chief Judge:

    Plaintiff brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

1    - OPINION AND ORDER

BACKGROUND

On July 19, 2011, plaintiff filed an application for SSI benefits, alleging disability since September 1, 1986 due to a learning disability, glaucoma, peripheral vision problems, and post-traumatic stress disorder. Tr. 121, 148. Her application was denied initially and on reconsideration. Tr. 15. After timely requesting a hearing, plaintiff appeared and testified before an administrative law judge (ALJ) on April 16, 2013. Id. A vocational expert, Mark A. McGowan, was in attendance, but he did not testify at the hearing. Tr. 15, 37-53. On May 22, 2013, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 12-24. The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review.

Plaintiff was 37 years old at the time of the ALJ's decision. Tr. 43. Plaintiff has a ninth-grade education and has worked as a daycare assistant, fast food cook, and as a temporary worker. Tr. 150, 221.

STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is supported by substantial evidence in the record and the correct application of the law. Valentine v. Comm'r Soc. Sec. Admin, 574

2    - OPINION AND ORDER

F.2d 685, 690 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). (internal quotation marks and citations omitted). In determining whether substantial evidence supports the decision, the courts must weigh "both the evidence that supports and detracts from the [Commissioners]'s conclusion" Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence "is susceptible to more that one rational interpretation," the Commissioner's conclusion must be upheld. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A).

3    - OPINION AND ORDER

The ALJ evaluated plaintiff's allegation of disability pursuant to the relevant sequential process. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" during the period of alleged disability. Tr. 17; 20 C.F.R. § 416.920(b).

At step two, the ALJ found that plaintiff had "non-severe" visual and mental impairments and a "severe" impairment of borderline intellectual functioning. Tr. 17; 20 C.F.R. § 416.920(c). However, at step three, the ALJ found that plaintiff's impairments did not meet or equal "one or a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude gainful activity." Tr. 19; 20 C.F.R. § 416.920(d).

The ALJ then found that plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with nonexertional limitations requiring simple, repetitive, routine tasks. Tr. 20. At step four, the ALJ found plaintiff had no past relevant work for the purpose of disability. 20 C.F.R. § 416.920(e),(f).

At step five, the ALJ relied solely on the Medical-Vocational Guidelines and found that plaintiff was not disabled and that jobs existed in significant numbers in the national

economy that plaintiff could perform. Tr. 22; 20 C.F.R. § 416.920(g). Therefore, the ALJ found plaintiff not disabled under the meaning of the Act. Tr. 23.

DISCUSSION

A. Step Two Findings

Plaintiff argues that the ALJ erred by finding that her mood and personality disorders were not severe because she had not consistently complained of symptoms. Plaintiff relies on the decision in Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996). There, the Ninth Circuit noted that depression "is one of the most under reported illnesses in the country because those afflicted often do not recognize that their condition reflects a potential serious mental illness." Id. at 1465. However, as true as this statement may be, Nguyen is clearly distinguishable from the present facts.

In Nguyen, the ALJ relied on the claimant's failure to seek treatment as the basis to dismiss a doctor's assessment of the claimant's condition. Id. Here, the ALJ did not dismiss a doctor's diagnosis and instead noted plaintiff's failure to seek treatment as evidence of her condition's lack of severity. It is proper for the ALJ to conclude that the frequency of treatment is inconsistent with the level of complaints when no medical evidence suggests that the plaintiff's "resistance was

5    - OPINION AND ORDER

attributable to her mental impairment rather than her own personal preference." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Plaintiff cites no medical evidence of record indicating that mental illness prevented her from seeking treatment. Further, plaintiff admitted to Dr. Cotgageorge, an examining psychologist, that her PTSD was not severe, and there is no evidence that this admission was a result of mental illness. Tr. 220.

Plaintiff also argues that the ALJ erred by finding her visual impairment not severe, based on a misinterpretation of a report by Dr. Czarneck, an examining physician. The ALJ relied on Dr. Czarneck's statement that plaintiff's exam was out of proportion to the alleged degree of visual loss. Tr. 18. Plaintiff argues that Dr. Czarneck's report should be interpreted differently. However, when evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. Burch, 400 F.3d at 679. Dr. Czarneck's report does, in fact, state that plaintiff's "exam is out of proportion to degree of visual loss." Tr. 231. A reviewing physician, Dr. Hayes, also supported this conclusion. Tr. 59. Further, Dr. Czarneck stated that plaintiff's visual ailment possibly could be motivated by secondary gain. Tr. 231. Based on this evidence,

it was rational for the ALJ to interpret the report as indicating that plaintiff's vision loss is not severe.

Moreover, the ALJ relied on plaintiff's lack of consistent treatment for any visual limitations. Tr. 18. The lack of treatment a claimant seeks for an impairment "is powerful evidence" regarding the extent of her symptoms. Burch, 400 F.3d at 681. This evidence, combined with Dr. Czarneck's and Dr. Hayes' opinions, serve as substantial evidence to support the ALJ's findings at step two.

B. Step Three Findings

Plaintiff also argues that the ALJ erred by finding that her impairment did not meet or equal the severity of listing 12.05C. Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation. Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013).

Plaintiff argues that the combination of her visual impairment and her borderline IQ score equals the overall severity of Listing 12.05C. However, a claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan v. Zabley, 493

7    - OPINION AND ORDER

U.S. 521, 531 (1990). Thus, plaintiff cannot prove equivalence "by showing that the overall functional impact of [her]… combination of impairments is as severe as that of a listed impairment." Id. at 531. Instead, plaintiff's condition must equal each criteria of Listing 12.05C. Kennedy 738 F.3d at 1176. Here, the ALJ found that plaintiff does not have a valid IQ score of 60 through 70. Tr. 19. Thus, plaintiff must show that her mental disability is equivalent in severity to this IQ range. Under the holdings in Zabley and Kennedy, her physical disabilities are irrelevant to this determination.

During plaintiff's examination, Dr. Cotgageorge noted that her visual problems invalidated her perceptual reasoning index score of 52. This result left plaintiff with a valid IQ score of 78, which is above the range of Listing 12.05C. The ALJ found that while the medical record "does not support the claimant has a severe visual impairment, the claimants *perceived* visual deficits apparently affected this evaluation[.]" Tr. 22 (emphasis added). Regardless, with an IQ score above 70, plaintiff does not meet the requirements of Listing 12.05C.

C. Credibility Determination

When assessing a plaintiff's claims regarding the intensity of symptoms, the ALJ must follow a two-step analysis. Molina, 674 F.3d at 1112. The ALJ first must determine if there is

objective evidence of an impairment that could reasonably produce the symptom. Id. If the plaintiff produces such evidence, "the ALJ may reject the claimant's testimony regarding the severity of symptoms only if he makes specific findings stating clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). In making these findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as unexplained failure to seek treatment of follow a prescribed course of treatment. Id. The ALJ may also consider the claimant's daily activities, work record, and the observation of physicians. Id. For example, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1112.

Plaintiff argues that the ALJ failed to meet this standard because the ALJ did not provide "specific and cogent reasons that support his credibility finding." Pl.'s Br. 20-21. The ALJ found that plaintiff's "medically determinable impairments" could reasonably cause some of her alleged symptoms, but that the "intensity, persistence and limiting affects" of the symptoms were not credible. Tr. 21. Specifically, the ALJ found that the medical record did not reflect the level of visual

9    - OPINION AND ORDER

impairment indicated by plaintiff, and the ALJ relied on the opinion of Dr. Czarneck in finding that this impairment could not reasonably produce the symptoms that plaintiff alleged. Tr. 18, 231. Notably, Dr. Czarneck's opined that plaintiff's "exam was out of proportion to the degree of visual loss" and suggested possible secondary gain. Tr. 231. Therefore, the ALJ's credibility findings as to plaintiff's visual allegations are supported by the record.

Next, the ALJ found that the severity of plaintiff's alleged symptoms was not consistent with her daily activities. Tr. 22. For example, the ALJ relied on the fact that plaintiff is able to cook, perform household chores, shop two to three times per week, and engage in social activities with friends and family. Id.

Finally, the ALJ found that plaintiff did not consistently seek treatment for her alleged mental or visual impairments. Tr. 17. The ALJ may account for unexplained failure to seek treatment or follow a prescribed course of treatment when assessing credibility. Smolen, 80 F.3d at 1284. As discussed above, the ALJ may rely on plaintiff's failure to seek treatment as long as it is not "attributable to her mental impairment rather than her own personal preference." Molina, 674 F.3d at 1114. Here, the ALJ relied on evidence from the record that

10    - OPINION AND ORDER

plaintiff both denied having PTSD and only sought sporadic treatment for her anxiety. Similarly, the ALJ found that plaintiff had not sought consistent treatment for any visual limitations. Tr. 17. In response, plaintiff cites no evidence of record showing that her failure to seek treatment was a result of her mental illness. Therefore, the ALJ did not err by using this evidence in the credibility determination.

The ALJ's reasons for discrediting plaintiff's complaints regarding her visual and mental limitations are clear, convincing, and supported by the record. Thus, the ALJ did not arbitrarily discredit plaintiff's testimony.

D. RFC Determination and Step Five Analysis

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence, because the ALJ improperly discounted Dr. Cotgageorge's opinion and the RFC failed to adequately capture plaintiff's restrictions related to concentration, persistence, or pace.

Dr. Cotgageorge found that "psychological factors do not appear to preclude [plaintiff] from work." Tr. 226. At the same time, Dr. Cotgageorge found that plaintiff had several cognitive limitations that affected her ability to work. Specifically, Dr. Cotgageorge found:

- Her ability to remember simple locations and work-like procedures was moderately impaired.

11    - OPINION AND ORDER

- Her ability to understand and remember very short and simple instructions was mildly to moderately impaired.

- Her ability to understand and remember detailed instructions was moderately impaired.

- Her ability to carry out detailed (three steps) instructions was mildly to moderately impaired.

- Her ability to maintain attention and concentration for extended periods (of about 15 minutes) was moderately impaired.

- The cognitive ability to perform activities within a schedule and maintain regular attendance and be punctual within customary tolerances was moderately impaired. This indicates her cognitive ability to do so, not her motivation to do so.

- Her ability to sustain an ordinary routine without special supervision was mildly to moderately impaired. This is her ability to perform tasks without direct, constant supervision.

- Her cognitive ability to work in coordination with or in proximity to others without being too distractible was mildly to moderately impaired.

Tr. 225. Dr. Frommelt reviewed Dr. Cotgageorge's report and concluded that plaintiff could perform work of limited complexity, with moderate limitations in understanding, remembering, and carrying out detailed instructions, and moderate limitations with maintaining attention and concentration for extended periods. Tr. 63, 166-173. With

12    - OPINION AND ORDER

respect to the opinions of Drs. Cotgageorge and Frommelt, the ALJ found:

> The undersigned gives some weight to Dr. Cotgageorge's opinion of the claimant's limitations. The objective findings of the evaluation support [that] the claimant has some cognitive deficits. While the evidence, as discussed above, does not support the claimant has a severe visual impairment, the claimant's perceived visual deficits apparently affected this evaluation and the undersigned finds the perceptual reasoning index score of 52 not valid, consistent with Dr. Cotgageorge's conclusions. However, the undersigned does not find that the claimant has more restrictive limitations than is noted in her above residual functional capacity. The claimant is able to engage in essentially completely normal activities of daily living.
>
> A state agency medical consultant, Gayle Frommelt, PhD, reviewed the claimant's records on November 4, 2011 to determine the claimant's mental residual functional capacity (Ex 2A). Dr. Frommelt found the claimant had moderate limitations with understanding, remembering, and carrying out detailed instructions. She also found the claimant had moderate limitations with maintaining attention and concentration for extended periods. Dr. Frommelt stated the claimant retained the ability to do work of limited complexity that could be learned in three months' time and could manage social interactions.

Tr. 22. Ultimately, the ALJ gave "some weight" to Dr. Cotgageorge's opinion and "significant weight" to Dr. Frommelt's and found that plaintiff was "limited to simple, repetitive, routine tasks." Tr. 20, 22. As noted by the Commissioner, the ALJ's decision did not explicitly reject or discount the findings of Dr. Cotgageorge or provided specific reasons for doing so.

13      - OPINION AND ORDER

Plaintiff argues that the RFC of "simple, unskilled" work does not encompass Dr. Cotgageorge's findings regarding plaintiff's moderate limitations of concentration, persistence, pace and punctuality, and that his implicit rejection of Dr. Cotgageorge's opinion was error.

In response, the Commissioner relies on the Ninth Circuit's opinion in Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008). There, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Id. at 1174. In that case, the record included a medical source opinion with a "concrete" restriction to "simple tasks." Id. at 1173-74. The ALJ assessed an RFC that limited the claimant to "simple, routine, repetitive sedentary work," and the Ninth Circuit found no error in the RFC because it was consistent with the medical record. Id.

However, I find that the facts of this case are more analogous to those in Brink v. Comm'r of Soc. Sec. Admin., 343 Fed. Appx. 211 (9th Cir. 2009). In Brink, the ALJ accepted medical evidence that the plaintiff had moderate difficulties with concentration, persistence, or pace, but the RFC hypothetical posed to the vocational expert "referenced only

14    - OPINION AND ORDER

'simple, repetitive work,' without including limitations on concentration, persistence, and pace." Id. at 212. In finding error and rejecting the Commissioner's reliance on Stubbs-Danielson, the Ninth Circuit explained:

> In *Stubbs-Danielson* ..., we held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." Id. at 1174. The medical testimony in *Stubbs-Danielson*, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. *Stubbs-Danielson*, therefore, is inapposite.

Id.

Here, as in Brink, the ALJ accepted Dr. Cotgageorge's and Dr. Frommelt's opinions that plaintiff had moderate, cognitive limitations related to concentration, persistence, and pace; however, the RFC only limited plaintiff "simple, repetitive, routine tasks." Tr. 20. Given the specific nature and degree of cognitive limitations found by Dr. Cotgageorge and endorsed in part by Dr. Frommelt, I find that the RFC is incomplete and does not adequately reflect those limitations. See Bentancourt v. Astrue, 2010 WL 4916604, at *3-4 (C.D. Ca. Nov. 27, 2010) (a hypothetical question to the vocational expert excluding the plaintiff's difficulties with concentration, persistence, or pace resulted in a conclusion that was "based on an incomplete

15    - OPINION AND ORDER

hypothetical question and unsupported by substantial evidence"); Melton v. Astrue, 2010 WL 3853195, at *8 (D. Or. Sept. 28, 2010), aff'd 442 F.3d. Appx. 339 (9th Cir. 2011) (ALJ erred when RFC assessment restricted the plaintiff to simple, repetitive tasks but did not include the plaintiff's mild-to-moderate limitation in maintaining concentration, persistence, or pace).

Moreover, the ALJ's error was not harmless, because the ALJ relied on the RFC assessment when relying solely on the grids and failing to obtain vocational expert testimony at step five.[1]

At step five, the ALJ considers whether a claimant can perform work that exists in the national economy considering the claimant's RFC, age, education, and work experience. The Commissioner can make a step-five determination by either using "the testimony of a vocational expert or by reference to the Medical Vocational Guidelines." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). The Medical-Vocational Guidelines (the grids) correlate a claimant's age, education, previous work experience, and exertional capability to direct a finding of either disabled or not disabled. Tr. 23; see 20 C.F.R. Part 404, Subpt. P, Appx. 2. Although an ALJ may rely on the grids if a

---

[1] Notably, a vocational expert was present at the administrative hearing; inexplicably, the ALJ failed to provide the vocational expert with a relevant hypothetical or allow plaintiff's counsel to provide an alternative hypothetical. Tr. 15, 37-53.

16    - OPINION AND ORDER

claimant suffers from exertional impairments, if a claimant has both exertional and nonexertional impairments, the grids typically serve as a framework and further evidence and testimony may be required. Id. §§ 200.00(a),(e)(2); see also Thomas, 278 F.3d at 960; Cooper v. Sullivan, 880 F.2d 1152, 1155-56 (9th Cir. 1989). In other words, the grids are generally inapplicable when "the predicate for using the grids — the ability to perform *a full range* of either medium, light, or sedentary activities — is not present." Burkart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (emphasis added); see also Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985) (the grids should not be used if they "fail accurately to describe a claimant's particular limitations").

At the same time, a non-exertional limitation "does not automatically preclude application of the grids. Rather, "[a] vocational expert is required only when there are significant and 'sufficiently severe' nonexertional limitations not accounted for in the grid." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). In other words, when a claimant has "significant non-exertional limitations," the ALJ cannot rely solely on the grids. Id.; Burkhart, 856 F.2d at 1335 (the grids are inapplicable "[w]hen a claimant's non-exertional limitations are 'sufficiently' severe so as to significantly limit the range

17     - OPINION AND ORDER

of work permitted by the claimant's exertional limitations"). In Hoopai, the Ninth Circuit upheld the ALJ's reliance on the grids based on the finding that the plaintiff's depression "was not sufficiently severe such that it significantly affects his ability to work beyond the exertional limitations." Id. at 1076.

Here, the ALJ relied on Social Security Ruling 85-15 and found that plaintiff's non-exertional limitations did not significantly affect her occupational base of unskilled work at all exertional levels. Tr. 23. SSR 85-15 provides:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

The ALJ found that plaintiff's documented mental limitations did not result in deficits that would preclude the ability to understand, carry out, and remember simple instructions; use judgment in making work related decisions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. Tr. 23. Thus, the ALJ

18    - OPINION AND ORDER

found that her limitations "have little to no effect on the occupational base of unskilled work at all exertional levels." Tr. 23.

However, as noted above, the ALJ's RFC failed to account for plaintiff's cognitive limitations in concentration, persistence, and pace. Accordingly, the ALJ erred by applying the grids despite evidence in the record suggesting that the grids may not encompass plaintiff's non-exertional limitations. See Perkins v. Colvin, 2013 WL 3930407, at *9 (D. Ariz. July 30, 2013) (finding that the ALJ erred by applying the grids when there was evidence that the claimant had non-exertional limitations related to his cognitive impairments).

E. Remand

As set forth above, the ALJ erred by assessing an RFC that did not account for the accepted limitations in plaintiff's concentration, persistence, and pace. The ALJ also erred at step five by relying solely on the grids and failing to obtain the testimony of a vocational expert. Accordingly, this matter is reversed and remanded for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1173-74 (9th Cir. 2000) (remand is appropriate when there are outstanding issues to be resolved before a disability determination can be made). On remand, the ALJ shall render an RFC assessment including plaintiff's

cognitive limitations and obtain evidence from a vocational expert.

## CONCLUSION

The ALJ's finding that plaintiff is not disabled within the meaning of the Act is not supported by substantial evidence in the record. Accordingly, the Commissioner's decision is REVERSED and REMANDED for further proceedings, as set forth above.

IT IS SO ORDERED.

Dated this 19th day of December, 2015.

_____
Ann Aiken
United States District Judge